COURT OF APPEALS
DECISION
DATED AND FILED

August 11, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2319**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV392

IN COURT OF APPEALS
DISTRICT III

ROBERT BURROWS, JR., AND ROBERTA KREUSER,

   PLAINTIFFS-APPELLANTS,

 V.

STEVE NINHAM AND AIMBRIDGE HOSPITALITY, LLC,

   DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Brown County: DONALD R. ZUIDMULDER, Judge. *Affirmed.*

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in** WIS. STAT. RULE 809.23(3).

¶1	PER CURIAM.	Robert Burrows, Jr., and Roberta Kreuser[1] appeal a circuit court order granting summary judgment in favor of Steve Ninham and Aimbridge Hospitality, LLC,[2] on the Burrows' claims for defamation and intentional infliction of emotional distress.	The Burrows argue that there are genuine issues of material fact regarding both claims and that these issues preclude summary judgment.	We reject the Burrows' arguments and affirm.

### BACKGROUND

¶2	The Burrows were long-time patrons of a restaurant at the Radisson Hotel and Conference Center in Green Bay.	They visited the restaurant for breakfast or lunch on weekends and typically asked for service from restaurant employee Sabrina Nash.

¶3	On May 22, 2022, the Burrows had to wait for a table at the bar because the restaurant was busy with several bus groups.	According to Nash, Kreuser "seemed kind of upset" and asked, "Are you going to seat the colored people before us?"	Nash informed her manager, Carol Kedzoir, of the incident because she was upset by the comment and did not think she could continue to wait on the Burrows.	Nash eventually submitted a written statement to management about the incident.

¶4	On May 29, 2022, the Burrows returned to the restaurant, where they were served by Saya Alam Ansari.	Kreuser requested a box at the end of the meal

---

[1] We refer to the plaintiffs-appellants collectively as "the Burrows" but also refer specifically to Burrows and/or Kreuser when addressing their individual conduct.

[2] We refer to the defendants-respondents collectively as "Aimbridge" but also refer specifically to Ninham when addressing his individual conduct.

to take some pastries from the buffet home, but Ansari informed her that the restaurant did not permit to-go boxes for the buffet. Ansari testified that Kreuser complained that the restaurant gave boxes to "all these black people" but not to her. Ansari informed Kedzoir about Kreuser's comments and subsequently submitted a written statement to management about the incident.

¶5      On June 9, 2022, the general manager of the hotel, Ninham, issued a letter to the Burrows to inform them that they were banned from all Radisson Hotels, facilities, and parking lots ("the June 9 letter"). The June 9 letter stated, in its entirety,

> This is to inform you that I have reviewed the information regarding the incident[s] that you were involved in while at the [restaurant] on May 22 and 29, 2022.
>
> Based on the information received, it has been determined that this type of activity/conduct jeopardizes the reputation of the Radisson Hotel and Conference Center Green Bay. Therefore consider this as notice that you are banned from all Radisson Hotel facilities AND parking lots effective immediately.
>
> Failure to comply with this order may result in criminal trespassing charges.
>
> If you have any questions or concerns regarding this, please direct those to myself.
>
> cc:     Radisson Management
>           Oneida Airport Hotel Corporation
>           Security Booths/Outlets
>           Surveillance Department
>           Players Club
>           Executive Hosts
>           Gaming Commission
>           Ban file

(Formatting altered.)

¶6      On March 27, 2023, the Burrows filed suit against Ninham and Aimbridge, the company that operates and manages the hotel and restaurant.  The Burrows alleged that the June 9 "letter's characterization of Burrows['] and Kreuser's conduct is false and defamatory because at no time did they engage in behavior that would warrant a ban or jeopardize the hotel's reputation."  The Burrows further alleged that this false and defamatory information had been shared with third parties.  The complaint set forth claims for libel, slander, and defamation;[3] intentional infliction of emotional distress; and punitive damages.

¶7      Aimbridge moved for summary judgment on all claims.  In a written decision following a hearing, the circuit court granted summary judgment to Aimbridge on the claims for defamation and intentional infliction of emotional distress.  The court determined that it did not need to address the Burrows' request for punitive damages in the absence of an underlying claim.  The court entered an order dismissing the case on February 12, 2025.  The Burrows appeal.

## DISCUSSION

¶8      The Burrows contend that the circuit court erred by granting summary judgment in favor of Aimbridge on the Burrows' claims for defamation and intentional infliction of emotional distress.  We review the court's decision to grant summary judgment de novo, benefitting from its analysis.  *See State Farm Mut. Auto. Ins. v. Langridge*, 2004 WI 113, ¶12, 275 Wis. 2d 35, 683 N.W.2d 75.  Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

[3] The parties refer to these three independent theories of liability collectively as "the defamation claim," so we follow their lead in this opinion.

4

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2023-24).[4]

¶9    "A factual issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶24, 305 Wis. 2d 538, 742 N.W.2d 294 (citation omitted). "A 'material fact' is one that is 'of consequence to the merits of the litigation.'" *Id.* (citation omitted). "Any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against the moving party." *Id.* (citation omitted).

## I. The defamation claim

¶10    The Burrows argue that the circuit court erred by concluding that they could not establish all of the elements of their defamation claim. A claim for defamation has three elements:

> (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the one defamed; and (3) the communication is unprivileged and tends to harm one's reputation, lowering him or her in the estimation of the community or deterring third persons from associating or dealing with him or her.

*Ladd v. Uecker*, 2010 WI App 28, ¶8, 323 Wis. 2d 798, 780 N.W.2d 216.

¶11    The circuit court concluded that the Burrows had failed to create a genuine issue of material fact on the second element, which requires communication to a third party. The court explained that the Burrows had not given the court any reason to question Aimbridge's evidence that the June 9 letter

---

[4] All references to the Wisconsin Statutes are to the 2023-24 version.

had only been "circulated amongst the [p]laintiffs and members of the [d]efendants' businesses."

¶12    The Burrows argue that Ninham's deposition testimony conflicts with his declaration in support of summary judgment, and this conflict creates a genuine dispute of material fact.  Specifically, in his declaration, Ninham averred that the entities copied on the June 9 letter were "departments and *business partners* of the hotel."  The Burrows emphasize the phrase business partners but do not develop any argument about why this phrase is significant.  The Burrows also direct us to Ninham's deposition, where Ninham testified that he has exclusive authority to ban people from the hotel and can make that decision unilaterally.[5]  The Burrows argue that this evidence establishes that "the casino has nothing to do with the hotel" and that "there are questions of material fact as to the exact relationships of the entities."

¶13    This argument mischaracterizes Ninham's deposition testimony.  Elsewhere in the deposition transcript, Ninham answered Burrows' questions about the relationships between the entities, testifying that Aimbridge manages the hotel for the Oneida Airport Hotel Corporation, which is owned by the Oneida Nation.  The casino is also managed by the Oneida Airport Hotel Corporation and owned by the Oneida Nation.  Given this undisputed evidence of common management and ownership of the entities, we see no reason to question the circuit court's conclusion that "the various parties carbon copied on the [June 9] letter … are subdivisions of [a] single entity."  For these reasons, the Burrows

---

[5] The Burrows further assert that Ninham also "testified that the plaintiffs were not banned from the casino and that what happened at the hotel or casino had no impact on the other."  However, none of the Burrows' citations to the record on appeal support this assertion.

have failed to persuade us that the court erred by determining that there was no genuine issue of material fact regarding the second element of a defamation claim—namely, whether the June 9 letter was communicated to any third person.

¶14     Alternatively, even if the Burrows could create a genuine issue of fact as to the second element of a defamation claim, the circuit court further determined that there was no genuine issue regarding the third element. *See id.* (explaining that, to establish the third element of a defamation claim, plaintiff must show that "the communication is unprivileged and tends to harm one's reputation, lowering him or her in the estimation of the community or deterring third persons from associating or dealing with him or her"). Specifically, the court concluded that the June 9 letter fell within the common interest privilege. *See Zinda v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 922-23, 440 N.W.2d 548 (1989) (explaining that a conditional common interest privilege applies to "defamatory statements … which are made in furtherance of common property, business, or professional interests").

¶15     The Burrows argue that Aimbridge has failed to demonstrate that the conditional privilege recognized in *Zinda* applies to the facts of this case. The defamation claim in *Zinda* arose from an employer's publication to employees that Zinda had been terminated for falsifying employment forms. *Id.* at 918. Our supreme court concluded that the common interest privilege applied because "[e]mployees have a legitimate interest in knowing the reasons a fellow employee was discharged" and the "employer has an interest in maintaining morale and quieting rumors which may disrupt business." *Id.* at 924.

¶16     The Burrows argue that these rationales do not apply to the present case and that "[t]he defendants failed to explain what common interest is shared

between" the entities that were copied on the June 9 letter. This argument goes nowhere because Aimbridge explained in its summary judgment briefing that the entities copied on the June 9 letter had a common interest in "notifying all departments … to enforce the ban and [to] prevent further conduct that jeopardizes the reputation of the business." The circuit court agreed, concluding that "[t]here can be no doubt that the … businesses shared" the common interest identified by Aimbridge. The court's conclusion is consistent with the general policy expressed in *Zinda* "that one is entitled to learn from his associates what is being done in a matter in which he or she has an interest in common." *See id.* at 923. Moreover, the Burrows have not identified any record evidence or legal authority that would undermine the court's conclusion. Therefore, we reject the Burrows' argument that the circuit court erred by relying on *Zinda*.

¶17    The Burrows also contend that the common interest privilege does not extend to the casino because it is "an entirely separate entity." We have already rejected the premise of this argument because it mischaracterizes the record evidence.

¶18    Having failed to persuade us that the circuit court erred by determining that the common interest privilege applies to the June 9 letter, the Burrows argue in the alternative that there is a genuine issue of material fact regarding whether Aimbridge forfeited this privilege. *See id.* at 925 (explaining that the common interest privilege may be forfeited "because of the defendant's knowledge or reckless disregard as to the falsity of the defamatory matter"). Here, because the Burrows deny making the bigoted comments that Nash and Ansari reported to Ninham, the Burrows contend that there is a genuine issue of fact regarding whether these reports were false.

8

¶19 The initial problem for the Burrows is that the reports from Nash and Ansari are not "the defamatory matter" that we consider when analyzing whether Aimbridge forfeited the privilege. Indeed, the June 9 letter does not contain the details of these reports, and there is no allegation that these details were shared with any third person. Instead, the purported defamatory matter in the June 9 letter is Ninham's determination that the Burrows engaged in activities or conduct that generally "jeopardizes the reputation of the" hotel. Accordingly, the Burrows must show that Ninham knew that this determination was false or recklessly disregarded its falsity.

¶20 To attempt to show that Ninham knew his determination was false, the Burrows make much of the fact that the written statements prepared by Nash and Ansari were both dated June 17, which is after Ninham sent his June 9 letter to the Burrows. The dates on the written statements do not create a genuine issue about whether Ninham knew his determination was false or recklessly disregarded its falsity because the undisputed evidence shows that Ninham already had the information contained in these statements at the time he issued the June 9 letter. Specifically, Ninham testified during his deposition that he first learned of the information contained in the statements through verbal reports from Kedzoir. Ninham also had verbal conversations with Nash and Ansari about the incidents. He testified that the verbal reports and conversations occurred prior to his issuing the June 9 letter.

¶21 The Burrows do not identify any discrepancies between the information that was verbally reported to Ninham and the information contained in the written statements, much less any discrepancy that would indicate to Ninham that the verbal reports from Nash and Ansari were false. In the absence of any basis for concluding that Ninham knowingly or recklessly disregarded the truth by

issuing the June 9 letter prior to receiving the written statements from Nash and Ansari, the Burrows have failed to create a genuine issue of fact. *See **Schmidt***, 305 Wis. 2d 538, ¶24 ("A factual issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." (citation omitted)).

¶22    The Burrows further argue that, by failing to consider the truthfulness of the reports that Ninham received from Nash and Ansari, the circuit court impermissibly determined that Nash and Ansari were more credible than the Burrows. *See **Pomplun v. Rockwell Int'l Corp.***, 203 Wis. 2d 303, 306-07, 552 N.W.2d 632 (Ct. App. 1996) (stating that "[t]he [circuit] court may not base its [summary judgment] ruling on its assessment of the weight of the evidence or the witnesses' credibility"). This argument misses the mark because, as explained above, the reports from Nash and Ansari are not "the defamatory matter." Instead, the alleged defamatory matter is Ninham's determination that the Burrows' conduct and activities, as reported by Ninham's employees, jeopardized the reputation of the hotel. Creating a dispute about whether the reports from Nash and Ansari were false does not, by itself, create a dispute about whether Ninham knew that these reports were false or that he recklessly disregarded their falsity.

¶23    To try to bridge this gap, the Burrows argue that Ninham made his determination without identifying any customers or other employees[6] who overheard the statements that Kreuser reportedly made to Nash and Ansari. Given

---

[6] A third employee who was working on the day of the incident prepared a statement describing the Burrows as "outdated," "entitled," and "disrespectful[]." The employee stated that he heard "this white lady call out really [l]oudly to [Nash] … ['Hey] … can I get some service over!!![']" but he did not mention any racist or bigoted comments.

the busy restaurant setting, the absence of corroboration is not surprising, nor is it evidence from which a jury could reasonably find that Ninham knew that the information from Nash and Ansari was false or that Ninham recklessly disregarded its falsity. *See id.* (explaining that a plaintiff opposing summary judgment must present some "evidence upon which a jury could reasonably find in the plaintiff's favor"). Accordingly, the Burrows have not demonstrated that the circuit court erred by concluding that they failed to create a genuine issue regarding whether the June 9 letter was unprivileged.

¶24 For these reasons, we conclude that the Burrows have not created a genuine issue of material fact regarding the second element of a defamation claim (whether defamatory matter was communicated to a third person), or the third element (whether the communication was unprivileged).[7] *See Ladd*, 323 Wis. 2d 798, ¶8. Accordingly, we affirm the circuit court's decision granting summary judgment in favor of Aimbridge on the Burrows' defamation claim.

## II. The intentional infliction of emotional distress claim

¶25 The Burrows also argue that the circuit court erred when it concluded that Aimbridge was entitled to summary judgment on the Burrows' claim for intentional infliction of emotional distress. Our supreme court has explained that

> [f]our elements must be established for a plaintiff to maintain such a claim[:] … (1) that the defendant's conduct

---

[7] Because these issues are dispositive on the defamation claim, we need not address Aimbridge's further argument that the June 9 letter does not contain any defamatory material. *See Lamar Cent. Outdoor, LLC v. DHA*, 2019 WI 109, ¶41, 389 Wis. 2d 486, 936 N.W.2d 573 ("An appellate court need not address every issue raised by the parties when one issue is dispositive." (citation omitted)).

was intentioned to cause emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) that the plaintiff suffered an extreme disabling emotional response to the defendant's conduct.

*Rabideau v. City of Racine*, 2001 WI 57, ¶33, 243 Wis. 2d 486, 627 N.W.2d 795.

¶26 Here, the circuit court concluded that the Burrows had failed to create a genuine dispute of material fact on the first or second element, and the court further determined that the allegations in the complaint were insufficient to state a claim on the fourth element.

¶27 Regarding the first element, whether Aimbridge intended to cause the Burrows emotional distress, the circuit court concluded that "[t]he [p]laintiffs have not provided a morsel of evidence that would suggest the [d]efendants had any motivation to cause distress to the [p]laintiffs." Instead, the court explained that "[t]he stated purpose of the [June 9] letter was to protect the reputation of the business" and reasoned that this motivation was "completely plausible."

¶28 In order to establish a genuine dispute on this first element, the Burrows must present evidence that Aimbridge's "conduct was engaged in for the purpose of causing emotional distress." *See id.*, ¶36. The Burrows contend that the content of the June 9 letter is evidence that Aimbridge intended to "publicly shame and humiliate the plaintiffs." In particular, the Burrows point to the lengthy list of copied entities, the threat of criminal trespass charges, and the fact that the ban extended to the parking lot.

¶29 We reject this argument because the Burrows have not offered any evidence that Ninham incorporated this content into the June 9 letter for the purpose of causing them emotional distress. On the contrary, Ninham testified

that he merely copied the casino's ban letter. Moreover, the content of the June 9 letter is consistent with Aimbridge's stated purpose of protecting the business's reputation because it helps ensure that the ban will be effective. Accordingly, nothing in the June 9 letter creates a genuine issue about Aimbridge's purpose in sending this letter.

¶30 The Burrows also argue that Aimbridge had ulterior motives for its conduct toward them. The Burrows point to evidence that they seemed unhappy during their last two visits and failed to leave a tip on their last visit to the restaurant to argue that Nash and Ansari "did not want to wait on the plaintiffs and sought a way to avoid them permanently." Based on this possible ulterior motive, the Burrows further argue that Nash and Ansari "manufactured remarks [that] would get the plaintiffs banned" and then "escalate[d] the matter to an unreasonable degree." The Burrows contend that after Nash and Ansari unreasonably escalated the matter, "[t]he defendants … became upset with the plaintiffs" and "wanted to publicly shame and humiliate" them.

¶31 We agree with the circuit court that the Burrows' argument about Aimbridge's motives is entirely speculative and therefore insufficient to create a genuine issue regarding the stated purpose of the June 9 letter. In particular, the

Burrows have presented no evidence tending to show that Ninham or Aimbridge was motivated by any purpose other than to protect the business's reputation.[8]

¶32 The Burrows contend that Aimbridge's stated purpose of protecting the business's reputation is undermined by the delay in taking action against the Burrows. The Burrows contend that "[h]ad the alleged incidents truly been of such concern to the defendants that they feared the business's reputation would be jeopardized, they would have acted with more alacrity." We disagree that this purported delay undermines the stated purpose of the June 9 letter. The fact that Aimbridge issued this letter eleven days after the second reported incident is consistent with Ninham's testimony that he waited to review and confirm the facts with the relevant employees before making a decision about whether to ban the Burrows. Moreover, even if the Burrows were correct that Aimbridge could have acted more quickly in imposing the ban, the Burrows do not explain how this purported delay is evidence that the purpose of the letter was actually to shame or humiliate the Burrows.

¶33 Because we agree with the circuit court that the Burrows failed to create a genuine issue regarding the first element of their claim for intentional infliction of emotional distress, we conclude that the circuit court properly granted

---

[8] In their reply brief, the Burrows argue that we should attribute the employees' motives to Aimbridge. This argument does not help the Burrows get any closer to establishing a genuine issue of material fact regarding whether Aimbridge acted with "the purpose of causing emotional distress." *See* **Rabideau v. City of Racine**, 2001 WI 57, ¶36, 243 Wis. 2d 486, 627 N.W.2d 795. Even if we agreed with the Burrows' speculative argument that there is a genuine issue about whether Nash and Ansari manufactured their reports in order to avoid having to serve the Burrows, at best this argument supports the conclusion that these employees acted with the purpose of having the Burrows banned from the premises. This argument does not, however, create a genuine issue about whether anyone acted with the necessary purpose of causing the Burrows emotional distress. *See* **id.**

summary judgment to Aimbridge. *See id.* (affirming summary judgment because the plaintiff had not created a genuine issue regarding whether the defendant's "conduct was engaged in for the purpose of causing emotional distress"). We therefore need not address the court's determinations on the second and fourth elements. *See **Lamar Cent. Outdoor, LLC v. DHA***, 2019 WI 109, ¶41, 389 Wis. 2d 486, 936 N.W.2d 573.

¶34 For the foregoing reasons, we affirm the circuit court's decision to grant summary judgment to Ninham and Aimbridge and dismiss the Burrows' complaint.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.